UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HANOVER AMERICAN INSURANCE COMPANY | * CIVIL ACTION NO: <br> * <br> * |
| VS | * JUDGE: <br> * |
| PATRICK SINGLEY, IVY RESTAURANT NEW ORLEANS, LLC, GAUTREAU'S ACQUISITION CORP., LEONARD TORRE AND REGINA TORRE | * <br> * <br> * MAGISTRATE JUDGE: <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

**NOW INTO COURT**, comes Hanover American Insurance Company ("Hanover") and for its Complaint for Declaratory Judgment Pursuant to 28 U.S.C. §2201, respectfully represents as follows:

### NATURE OF THE ACTION

1.

Hanover seeks a declaration that it has no obligation to defend or indemnify Leonard A. Torre and Regina Torre as alleged additional insureds under certain policies of insurance issued to Gautreau's Acquisition Corp. ("Gautreau"), Patrick Singley, and Ivy Restaurant New Orleans, LLC ("Ivy"), in connection with that certain lawsuit styled as *Ivy Restaurant New Orleans, LLC, Patrick Singley, Rebecca Singley, Gautreau's Acquistion Corp. , Alberta Pate, and Jill Stoutz v. Leonard A. Torre and Regina V. Torre,* Case No. 15-9422 pending on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana ("Underlying Lawsuit").

1

2.

In addition, Hanover seeks a declaration that it has no obligation to defend and indemnify Mr. Singley, Ivy, and Gautreau, who were each named as reconventional and/or third-party defendants, in the Underlying Lawsuit. Pursuant to the Hanover Policies (defined *infra)*, Hanover has been participating in the defense of Patrick Singley and Ivy against the third-party demands filed in the Underlying Lawsuit subject to a full reservation of rights. Hanover has declined to defend Gautreau under the terms of the Hanover Policies. This action seeks a declaration of the rights and responsibilities of Hanover under the Hanover Policies with respect to Mr. Singley's, Ivy's and Gautreau's request for defense and indemnity in the Underlying Lawsuit.

## PARTIES

3.

Plaintiff, Hanover, is incorporated in the State of New Hampshire and has its principal place of business in Massachusetts.

4.

Defendant, Patrick Singley, is a person of full age and majority and, upon information and belief, is a resident of the Parish of Orleans, State of Louisiana.

5.

Defendant, Ivy Restaurant New Orleans, LLC, is a limited liability company licensed to do and doing business in the State of Louisiana, with its registered office located in the Parish of Orleans.

6.

Defendant, Gautreau's Acquisition Corp., is a Louisiana corporation, licensed to do and doing business in the State of Louisiana with its registered office in the Parish of Orleans.

2

7.

Defendant, Leonard A. Torre, is a person of full age of majority and, upon information and belief, is a resident of the Parish of Orleans.

8.

Defendant, Regina V. Torre, is a person of full age of majority and, upon information and belief, is a resident of the Parish of Orleans.

## JURISDICTION AND VENUE

9.

This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (a)(1) because the parties are of diverse citizenship and the matter in controversy concerns damages in excess of $75,000, exclusive of interests and costs, sought to be recovered in an Underlying Lawsuit.

10.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b).

## THE UNDERLYING LAWSUITS

### (Allegations Against Mr. and Mrs. Torre)

11.

On September 30, 2015, Mr. Singley, Ivy, Gautreau ("Underlying Plaintiffs") and others filed a Petition for Damages in the Underlying Lawsuit against Mr. and Mrs. Torre ("Underlying Principal Demand"). A copy of that Underlying Principal Demand is attached hereto as Exhibit 1.

12

In the Underlying Principal Demand, the Underlying Plaintiffs alleged that the Torres owned certain commercial property located at 5501 Magazine Street, which Ivy began leasing

3

effective March 1, 2013 for purposes of opening a restaurant. Underlying Plaintiffs further alleged that Mr. Singley and Gautreau are owners and/or creditors of Ivy.

13.

According to the Underlying Plaintiffs, the Torres warranted the property was suitable for the purpose for which it was leased and was free from vices or defects that would prevent its use for that purpose.

14.

After taking possession of the leased property, the Underlying Plaintiffs averred that they encountered a noisome odor that was not previously discovered and which rendered the property defective and unsuitable for its intended use. In further allegation, despite alerting the Torres about the odor, the Torres did not correct the pre-existing defect, interfering with Underlying Plaintiff's peaceable possession of the property. As a "direct and proximate result of [the Torres'] failure to maintain and/or repair the pre-existing" defect, Underlying Plaintiffs alleged they were forced to close the restaurant in or around early 2015. Underlying Plaintiffs sought the following damages as a result of the Torres' alleged concealment and failure to disclose the defect in the premises; unreasonable interference with Underlying Plaintiffs' peaceable possession of the property; negligent maintenance and negligent repair of the property; breach of their covenant to repair the property; loss of use of the property; loss of income; loss of profits; loss of business opportunity; wrongful eviction; mental anguish and emotional distress; economic loss; and other general and special damages.

15.

On March 14, 2016, the Civil District Court issued a judgment sustaining the Torres' exception of no right of action and dismissing Mr. Singley's and Gautreau's claims against the

Torres. A copy of the March 14, 2016 judgment is attached as Exhibit 2.

16.

On January 12, 2018, the Civil District Court Judge issued a judgment dismissing Ivy's claims against the Torres with prejudice. A copy of the January 12, 2018 judgment is attached as Exhibit 3.

17.

There are no remaining claims against the Torres for which the Torres could seek indemnification as alleged additional insureds.

**(Allegations Against Ivy, Mr. Singley, and Gautreau)**

18.

On June 28, 2016, the Torres reconvened against Mr. Singley and Ivy and filed a third-party demand against Gautreau. By way of a First Amended Reconventional and Third-Party Demand filed on February 15, 2017, the Torres averred that Mr. Singley executed a lease on behalf of Ivy for a 5-year period, and Ivy opened for business on November 12, 2013. A copy of the First Amended Reconventional and Third-Party Demand is attached as Exhibit 4.

19.

The Torres next allege that Ivy and Mr. Singley defaulted on the lease agreement by failing to pay rent and failing to pay an overdue tax bill, resulting in the lease terminating on October 26, 2015. The Torres contend they were unable to re-let the premises.

20.

As a result, the Torres assert causes of action and damages resulting from Ivy's and Singley's alleged (a) failure to obtain insurance in accordance with the lease obligations; (b) failure to defend and indemnify the Torres' against any liability the Torres may owe to Ivy/Singley for

the claims asserted in the Underlying Principal Demand; (c) breach of lease; (d) bad faith breach of contract; (e) violations of the Unfair Trade Practices Act by virtue of allegedly false, defamatory, and deceiving allegations asserted in the Underlying Principal Demand; and (f) conspiracy to assert false claims based on allegations allegedly known to be false.

21.

The Torres further allege that Mr. Singley and Ivy failed to maintain and repair the property, contending in alternative fashion that, "in the event an odor existed", such odor was caused either by a prior tenant or Ivy's renovations and failure to maintain the property.

22.

The Torres' only claim asserted against Gautreau is for its alleged violation of the Unfair Trade Practices Act.

## THE HANOVER POLICIES

23.

Hanover issued the following policies of liability insurance to Gautreau and Patrick Singley (collectively "Hanover's Policies"):

| Primary Policy Number | Policy Period |
| --- | --- |
| RZO 9916999 00 | 4/10/13 – 4/10/14 |
| RZO 9916999 01 | 10/8/13 – 10/8/14 |
| RZO 9916999 02 | 10/8/14 – 10/8/15 |

Policy number RZO991699 00 was cancelled effective October 8, 2013.

24.

The Hanover Policies contain certain terms, conditions, definitions, limitations, and exclusions.

25.

The Coverage A Insuring Agreement in each of the Hanover Policies provides in relevant part:

> **Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. ...
>
> ...
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" ....;
>   (2) The "bodily injury" or "property damage" occurs during the policy period; and
>   (3) Prior to the policy period, no insured listed under Paragraph 1. Of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. ...
>
> ...
>
> d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
>   (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>   (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \* \*

26.

The Hanover Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

7

27.

The Hanover Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from "bodily injury", sickness or disease."

28.

The Hanover Policies define "property damage" as

> Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> For the purposes of this insurance, electronic data is not tangible property.

29.

Each of the Hanover Policies contain the following Expected or Intended Injury exclusion:

> This insurance does not apply to:
>
> Expected Or Intended Injury
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

30.

The Hanover Policies contain the following Damage to Property Exclusion:

> This insurance does not apply to:
>
> Damage To Property
> "Property damage" to:
> a. Property you [Ivy/Singley] own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement,

8

> restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;....

31.

The Hanover Policies contain a Contractual Liability exclusion that excludes coverage for:

> Contractual Liability
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1) That the insured would have in the absence of the contract or agreement; or
> (2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>   (a) Liability to such party for, or the cost of, that party's defense has also been assumed in the same "insured contract"; and
>   (b) Such attorney fees and litigation expense are for defense of that party against a civil or alternative dispute resolution proceeding in which damage to which this insurance applies are alleged.

32.

The Hanover Policies define "insured contract" to include "[a] contract for a lease of premises."

33.

The Coverage B Insuring Agreement in the Hanover Policies, as modified by the Louisiana Changes – Insuring Agreement endorsement, provides in part:

> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to

9

which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. ....

...

b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your [Ivy's] business but only if the offense was committed in the "coverage territory" during the policy period.

34.

The Policies define "personal and advertising injury" in relevant part as follows:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

...

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

...

35.

The Coverage B exclusions also contain a Knowing Violation of Rights of Another Exclusion that coverage for:

Knowing Violation Of Rights Of Another
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

36.

The Coverage B exclusions also contain a Breach of Contract exclusion that bars coverage as follows:

Breach Of Contract
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

10

37.

The Policies contain a CGL Special Broadening Endorsement, which provides in pertinent part:

> Under Section II – Who Is An Insured, Paragraph 5 is added as follows:
> 5.a. Any person or organization with whom you agreed, because of a written contract, written agreement or permit, is an insured, but only with respect to:
>   (1) "Your work" for the additional insured(s) at the location designated in the contract, agreement or permit.
>   (2) Facilities owned or used by you.
>   This insurance applies on a primary basis if that is required by the written contract, written agreement, or permit.
> b. This provision does not apply:
>   (1) Unless the written contract or written agreement has been executed or permit has been issued prior to the "bodily injury", "property damage", "personal injury" or "advertising injury".
>   (2) To any person or organization included as an insured by an endorsement issued by us and made a part of this Coverage Part.
>   (3) To any person or organization included as an insured under item 2 of this endorsement.
>   (4) To any lessor of equipment:
>     (a) after the equipment lease expires; or
>     (b) if the "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the sole negligence of the lessor.
>   (5) To any:
>     (a) Owners or other interests from whom land has been leased which takes place after the lease for that land expires; or
>     (b) Managers or lessors of premises if:
>       (i) the occurrence takes place after you cease to be a tenant in that premises; or
>       (ii) the "bodily injury", "property damage", "personal injury" or "advertising injury" arises out of structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor.

38.

Any coverage that may be provided under the Hanover Policies to additional insureds, subject to all terms, limitations, conditions, and exclusions therein, is excess:

11

> This insurance is excess over:
>
> ...
>
> Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.
>
> When this insurance is excess, we will have no duty under Coverage L – Business Liability to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."

## FIRST CLAIM FOR DECLARATORY RELIEF

### (The Hanover Policies Do Not Obligate Hanover to Defend and/or Indemnify The Torres As Alleged Additional Insureds)

39.

Paragraphs 1 through 38 of this Complaint are hereby incorporated and made Paragraphs 1 through 38 of this First Claim for Declaratory Relief.

40.

As an initial matter, all claims against the Torres have been dismissed, precluding the possibility any indemnity obligation even if the Torres qualified as additional insureds.

41.

Alternatively, to the extent that the Torres may qualify as additional insureds under the Hanover Policies, Hanover had no duty to defend the Torres because any additional insured coverage that may have been provided is excess over other primary insurance available to the Torres under the terms of the Hanover Policies.

42.

Upon information and belief, the lease agreement did not require any additional insured coverage obtained thereunder to be primary. Additionally, upon information and belief, the Torres had other available coverage through another insurer that provided coverage for the allegations

asserted in the Underlying Principal Demand.

43.

Alternatively, the claims asserted against the Torres do not constitute "bodily injury" or "property damage" caused by an "occurrence" within the meaning of the Coverage A - Insuring Agreements, precluding the possibility of coverage to the Torres as putative additional insureds.

44.

Alternatively, the claims asserted against the Torres do not constitute "personal and advertising injury" caused by an offense within the meaning of the Coverage B - Insuring Agreements, precluding the possibility of coverage to the Torres as putative additional insureds.

45.

Alternatively, the claims asserted against the Torres are excluded from coverage by one or more exclusions, including the Damage to Property exclusion, Breach of Contract exclusions, and/or Knowing Violation of Rights of Another exclusion.

46.

Therefore, the Hanover Policies do not oblige Hanover to defend or indemnify the Torres as additional insureds.

## SECOND CLAIM FOR DECLARATORY RELIEF

**(The Hanover Policies Do Not Obligate Hanover to
Defend and/or Indemnify Gautreau, Mr. Singley, or Ivy for
Alleged Violations of Louisiana's Unfair Trade Practices Act)**

47.

Paragraphs 1 through 46 of this Complaint are hereby incorporated and made Paragraphs 1 through 46 of this Second Claim for Declaratory Relief.

13

48.

The Coverage A - Insuring Agreements require Hanover to provide coverage only if "bodily injury" or "property damage" is caused by an "occurrence," which is defined to mean "an accident".

49.

The Torres allege that Gautreau, Ivy, and Mr. Singley violated Louisiana's Unfair Trade Practices Act by asserting "false, defamatory and deceiving" allegations against the Torres, entitling the Torres to expenses, attorneys fees, and legal interest.

50.

Violations of the Unfair Trade Practices Act are inherently intentional by nature, and do not constitute an "occurrence" within the meaning of the Insuring Agreements, precluding the possibility of coverage.

51.

Alternatively, the Coverage A – Insuring Agreements require Hanover to provide coverage only if "the insurance applies."

52.

As set forth above, the Expected or Intended Exclusion provides that insurance under the Hanover Policies does not apply to any "bodily injury" or "property damage" that is "expected or intended from the standpoint of the insured."

53.

Accordingly, alleged violations of the Unfair Trade Practices Act are necessarily excluded by the Expected or Intended Acts exclusion, foreclosing the possibility of coverage.

54.

Therefore, the Hanover Policies do not respond to any liability that Ivy, Mr. Singley, or Gautreau may have for alleged violations of the Unfair Trade Practices Act.

## THIRD CLAIM FOR DECLARATORY RELIEF

**(The Hanover Policies Do Not Obligate Hanover to
Defend and/or Indemnify Ivy or Mr. Singley Because the Remaining Allegations
Do Not Satisfy the Coverage A - Insuring Agreement)**

55.

Paragraphs 1 through 54 of this Complaint are hereby incorporated and made Paragraphs 1 through 54 of this Third Claim for Declaratory Relief.

56.

As set forth in the Coverage A - Insuring Agreements, Hanover is obliged to provide coverage only for "property damage" and/or "bodily injury" caused by an "occurrence," as those terms are defined in the Hanover Policies.

57.

In sum and substance, the Torres allege that Ivy and Mr. Singley defaulted on and breached a lease agreement by failing to pay rent, failing to pay taxes, failing to secure insurance as required by the lease, and failing to defend and indemnify the Torres against the claims asserted in the Underlying Principal Demand by Mr. Singley and Ivy.

58.

The Torres fail to allege they sustained any "bodily injury" or "property damage" sufficient to satisfy the Coverage A - Insuring Agreements, precluding the possibility of coverage.

59.

Moreover, the alleged default and breach of a commercial lease agreement arising out of Ivy and Singley's alleged failure to pay either sums contractually due or undertake contractually-required obligations does not constitute an "occurrence."

60.

Accordingly, the Hanover Policies do not provide coverage to the Mr. Singley or Ivy.

## FOURTH CLAIM FOR DECLARATORY RELIEF

**(Alternatively, The Damage to Property Exclusion Precludes Coverage for Damage to the Leased Premises That May Have Been Caused By Mr. Singley or Ivy)**

61.

Paragraphs 1 through 60 of this Complaint are hereby incorporated and made Paragraphs 1 through 60 of this Fourth Claim for Declaratory Relief.

62.

Alternatively, even if the mere presence of an odor could qualify as "property damage" caused by an "occurrence" within the meaning of the Insuring Agreement (which is denied), the Coverage A -Insuring Agreements require Hanover to provide coverage only if "this insurance applies."

63.

As set forth above, the Damage to Property exclusion excludes coverage for damage to property that was leased to Mr. Singley and Ivy.

64.

Thus, the Hanover Policies do not respond to any liability that Ivy or Mr. Singley may have to the Torres for any odor that may have been present.

16

## FIFTH CLAIM FOR DECLARATORY RELIEF

### (Alternatively, The Contractual Liability Exclusion Precludes Coverage for Damage to the Leased Premises That May Have Been Caused By Mr. Singley or Ivy)

Paragraphs 1 through 64 of this Complaint are hereby incorporated and made Paragraphs 1 through 64 of this Fifth Claim for Declaratory Relief.

65.

The insuring agreements set forth in paragraph -- requires Hanover to provide coverage only if "the insurance applies."

66.

As set forth above, the Contractual Liablity Exclusion provides that insurance under the Hanover Policies does not apply to any "bodily injury" or "property damage" for which the "insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

67.

In the Reconventional Demand, the Torres allege that the Ivy and Singley, intentionally, willfully, and in bad faith breached the lease agreement – including without limitation the failure to pay rent, failure to pay property taxes, failure to maintain the property – causing certain damages.

68.

To the extent that Ivy and Mr. Singley contractually obligated themselves to pay rent, taxes, secure insurance, maintain the property, or otherwise undertake specific actions, the Contractual Liability exclusion applies to bar coverage.

## SIXTH CLAIM FOR DECLARATORY RELIEF

### (The Expected or Indented Exclusion Precludes Hanover's Obligation to Defend and/or Indemnify Ivy or Mr. Singley)

69.

Paragraphs 1 through 68 of this Complaint are hereby incorporated and made Paragraphs 1 through 68 of this Sixth Claim for Declaratory Relief.

70.

The Coverage A - Insuring Agreements require Hanover to provide coverage only if "the insurance applies."

71.

As set forth above, the Expected or Intended Exclusion provides that insurance under the Hanover Policies does not apply to any "bodily injury" or "property damage" that is "expected or intended from the standpoint of the insured."

72.

In the Reconventional Demand, the Torres allege that the Ivy and Singley, intentionally, willfully, and in bad faith breached the lease agreement – including without limitation the failure to pay rent, failure to pay property taxes, failure to maintain the property – causing certain damages.

73.

The Expected or Intended exclusion applies as a matter of law to bar coverage for damages arising out of the alleged intentional, willful, and bad faith breach of the lease agreement.

WHEREFORE, Hanover prays that, after due proceedings, this Court award declaratory relief and enter a judgment in favor of Plaintiff, Hanover Insurance Company, and against Defendants, Gautreau's Acquisition Corp., Patrick Singley, Ivy Restaurant New Orleans, LLC,

Leonard A. Torre, and Regina V. Torre, declaring that Hanover American Insurance Company has no defense or indemnity obligation to Gautreau's Acquisition Corp., Patrick Singley, Ivy Restaurant New Orleans, LLC, Leonard A. Torre, and Regina V. Torre in the Underlying Lawsuit and awarding all costs of this proceeding and for all general and equitable relief as this Honorable Court may deem just in the premises and be competent to grant.

Respectfully submitted,

KRISTOPHER T. WILSON, La. Bar No. 23978
TINA L. KAPPEN, La. Bar No. 29579
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
**ATTORNEYS FOR**
**THE HANOVER AMERICAN INSURANCE COMPANY**